## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 21-cr-236 (PAM/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Gregory Jones, | |
| Defendant. | |

Gregory Jones is charged with one count of possession with intent to distribute fentanyl and one count of being a felon in possession of a firearm — armed career criminal. Indictment, Dkt. No. 1. He moves to suppress evidence seized from a GMC Yukon SUV on February 16, 2021. Dkt. No. 23. The Yukon was parked across the street from the address on the search warrant. For the reasons discussed below, the Court recommends the motion be denied.

## FINDINGS OF FACT

**I.  Search Warrant and Application**

On February 12, 2021 a Hennepin County District Court judge issued a search warrant authorizing a search of "3626 North 4th Street in Minneapolis as well as any vehicles, storage areas, outbuildings or garages associated to the address." Gov't Ex. 1 (Warrant at 1). The warrant authorized officers to search for and seize a broad array of items related to drug trafficking, including but not limited to controlled substances, related packaging and equipment, documents, devices that may be used to communicate for drug trafficking purposes, and firearms, ammunition, and accessories. *Id.* The warrant authorized a nighttime search and entry without announcement. *Id.* at 3.

In her supporting sworn application Deputy Melissa Rolfes stated she is a Deputy Hennepin County Sheriff assigned to the Violent Offender Task Force (VOTF), investigating controlled substance crimes and apprehending violent offenders. *Id.* (Applic. at 2). At the time of the warrant she and VOTF personnel were investigating narcotics trafficking at 3626 North 4th Street in Minneapolis based on information from a concerned citizen (CC). The CC, whose identify is known to Deputy Rolfes, is a first time reporter to VOTF personnel. *Id.*

The CC reported that a male and female living in the single family home located at the address were selling fentanyl pills and marijuana out of the home. *Id.* Based on information provided by the CC, VOTF personnel were able to identify the residents as Gregory Jones and Shanae Nickson. *Id.* The CC stated that Jones obtains fentanyl pills from out of state and the pills are made to look like regular prescription pills. *Id.* The CC also stated Nickson and Jones sell marijuana out of the residence. *Id.* The CC also provided specific details about the residence and vehicles associated with it. *Id.* The CC stated that Jones has a violent history, possesses a handgun, and is a member of the Gangster Disciples street gang. VOTF personnel confirmed the accuracy of this information. *Id.*

VOTF personnel conducted physical surveillance at 3626 North 4th Street and observed several vehicles registered to Jones at that address. *Id.* Deputy Rolfes ran a query on Jones and Nickson which showed that Jones's criminal history includes several convictions for selling controlled substances, a second degree assault conviction, and a conviction for possessing a pistol/assault weapon—conviction for a crime of violence. *Id.* Jones is ineligible to possess firearms due to his convictions for crimes of violence. *Id.*

On January 14, 2021 VOTF personnel obtained trash from the bin that was left curbside for collection. *Id.* The trash included mailings for Nickson and Jones at 3626

2

North 4th Street. One of the packages addressed to Jones tested positive for marijuana. *Id.* at 3. The trash also included approximately 15 drug packages which varied in size from small baggies (one-to-two inches square), sandwich size baggies missing the corners (known as a "tear-off"), and one-gallon size Ziploc bags. Based on her training and experience Deputy Rolfes knew these types of drug packaging are consistent with someone selling controlled substances. *Id.*

Three days before the warrant was issued Deputy Rolfes did a second trash pull from the residence trash left curbside. *Id.* In the trash she found a freezer bag containing a substance that field tested positive for marijuana. The trash also included packaging that was similar to the previous trash pull and which field tested positive for cocaine. Investigators also retrieved a prescription pill bottle with Nickson's name on it and 55 "M Box" pills, which are commonly made into fentanyl pills but which have the same appearance as Oxycodone Hydrochloride, a Scheduled controlled substance. A field test on one pill was positive for cocaine. The pills, which were consistent with what the CC described to VOTF personnel, have an estimated street value of $1,375. *Id.*

In her warrant application Deputy Rolfes stated her belief that the residence was being used to traffic large amounts of controlled substances including marijuana, cocaine, and fentanyl. *Id.* From her training and experience Deputy Rolfes knew that people involved in distribution of such drugs often possess and use firearms to protect their narcotics and themselves. *Id.* She also knew it is common for people involved in narcotics distribution to hide their drugs and guns in vehicles and garages. *Id.* at 4.

## II.   Execution of the Search Warrant

The warrant was executed on February 16, 2021. Gov't Ex. 1 (evidence inventory). Officers searched the residence at 3626 North 4th Street, a Mercedes Benz parked in the

3

driveway, and the Yukon parked across the street. A Springfield XD9 pistol and magazine, as well as pills were found in the Yukon. *Id.* Defendant moves to suppress this evidence.[1]

## CONCLUSIONS OF LAW

Jones contends (1) the search warrant was not supported by probable cause as to the Yukon; (2) the search of the Yukon exceeded the scope of the warrant; (3) the warrant inadequately described the Yukon; (4) the automobile exception to the warrant requirement does not apply here; and (5) the *Leon* good faith exception to the exclusionary rule does not apply on these facts. Motion, Dkt. No. 23. On May 10, 2022 the Court held an evidentiary hearing at which Deputies Rolfes, Cody Turner, and Nicholas Peterson testified. Dkt. No. 32.[2]

### I.     Probable Cause

Jones contends the "search warrant and affidavit . . . fail to set forth probable cause to search the Yukon truck" because "the application and affidavit relied in part on conclusory secondhand information from a first-time informant or tipster." Motion at 1, Dkt. No. 23; Def. Mem. 19, Dkt. No. 36. Jones does not further develop this argument as to the reliability of the information provided by the CC, and the Court finds it lacks merit.

Courts examine the "totality of the circumstances" to determine whether an affidavit provides probable cause to issue a search warrant. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The task of the judge issuing the warrant is "to make a practical, common-sense

---

[1] Items seized from the residence and Mercedes are not at issue in this motion. Although Jones asserts that the "warrant amounts to an improper generalized warrant," he does not seek to suppress any evidence seized from the residence or from the Mercedes that was parked in the driveway. *See* Def. Mem. 19, Dkt. No. 36.

[2] A transcript of the hearing is found at Docket No. 34. Thirty-six government exhibits were received at the hearing. Exhibit 1 is the search warrant, application, and evidence inventory; Exhibit 2 is a January 5, 2021 printout of a DVS record showing the GMC Yukon registered to Jones; Exhibits 3 and 4 are January 5, 2021 printouts of DVS records and photos of Jones and Nickson, respectively; and Exhibits 5 through 36 are photos from the execution of the search warrant.

4

decision, given all the circumstances set forth in the affidavit," whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* A reviewing court's role is "simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238-39 (quotations and citations omitted).

Here, Deputy Rolfes's supporting application states that a CC provided information that a male and female were selling fentanyl pills and marijuana out of the single-family home at the North 4th Street address. VOTF personnel identified them as Jones and Nickson, then had the CC confirm the identification by showing the CC color photos of them (without names) from DVS records. The CC told VOTF that Jones has a handgun, is a Gangster Disciples gang member, and has a violent history, and the CC provided "specific details about the residence and vehicles associated with the location." The VOTF then confirmed the accuracy of the information provided. VOTF did physical surveillance and "observed several vehicles registered to Jones at that address." VOTF checked Jones's criminal history and found several convictions for selling drugs, an assault conviction, a conviction for possessing a pistol/assault weapon—crime of violence, and that Jones is ineligible to possess firearms due to his convictions for crimes of violence.

Deputy Rolfes and other VOTF personnel also did two curbside trash pulls, one on January 14, 2021 and one within 72 hours before her February 12, 2021 warrant application. The trash contained mailings for Jones and Nickson at the address as well as indicia of narcotics trafficking including drug packaging, baggies, a prescription pill bottle with Nickson's name, 55 pills, a package that field tested positive for marijuana, and a pill that was positive for cocaine.

In short, VOTF personnel verified the CC's information about narcotics trafficking activities and vehicles registered to Jones at the North 4th Street address. The warrant

does not rest on "conclusory secondhand" or unreliable information, but on reliable information corroborated by VOTF personnel. The above facts, combined with Deputy Rolfes's knowledge and experience regarding narcotics trafficking and firearms which she described in her sworn application, provided a substantial basis for the issuing judge to conclude there was probable cause to support the warrant. Thus, the Court finds that the search warrant is valid and supported by probable cause.

## II.      Scope and Particularity

Jones contends the search of the Yukon exceeded the scope of the warrant because it was located outside the premises of the address. He thus claims the search was unlawful because, apart from the premises, the warrant provides no authority to search the Yukon.

The Fourth Amendment provides that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." This particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *United States v. Pennington,* 287 F.3d 739, 744 (8th Cir. 2002) (quoting *Maryland v. Garrison,* 480 U.S. 79, 84 (1987)). The authority to search granted by a warrant is "limited to the specific places described in it and does not extend to additional or different places." *Id.* (quotation omitted).

It is undisputed that the Yukon was not on the premises or within its curtilage; it was parked across the street. Tr. 50, 76, 84. The law is clear that a vehicle found on a premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises. *United States v. Hill*, 8 F.4th 757, 760 (8th Cir. 2021). The vehicle need not be named in the search warrant. *Id.* (upholding search of pickup truck parked in driveway of residence as within

6

the scope of warrant authorizing search of the premises address); *see also United States v. Coleman*, 909 F.3d 925, 932 (8th Cir. 2018) (warrant to search "the premises and curtilage area" authorized search of vehicle parked in the driveway). The Eighth Circuit has held, in a case involving a rural property, that when a warrant specifically mentions certain structures in describing the property, it "authorizes a search of these structures and, by implication, any other vehicles, structures, or property not noticeably separate from them." *Pennington,* 287 F.3d at 744-45 (upholding search of red truck and dump truck not specifically listed in warrant to search an address which mentioned a modular home, metal outbuilding, and box trailer). Here, the Yukon was not on the premises or within its curtilage. Therefore the warrant's authorization to search the premises does not itself encompass the Yukon.[3]

However, the warrant is not limited to the premises as it specifically authorizes the search of "any vehicles . . . associated to the address." Thus, the question becomes whether the Yukon was within the scope of the warrant's language referencing vehicles "associated to the address" and if so was the Yukon particularly described by that language. The Court rejects Jones's contention that the warrant lacked particularity as to the vehicles to be searched. The particularity requirement is satisfied when the description "is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Steele v. United States,* 267 U.S. 498, 503 (1925).

---

[3] It is possible that Jones's argument regarding the curtilage is based on a grammatical construction of the precise language used in the warrant. To the extent that Jones's argument is that "associated to the address" means "the curtilage," the Court rejects that strained interpretation of the language of the warrant. The phrase "associated to the address" is not—at least in the case of vehicles—synonymous with "curtilage."

Though the warrant does not specifically identify the Yukon by make, model, license plates, physical description, or VIN number, the application supporting it states that "VOTF personnel conducted physical surveillance at 3626 North 4th Street and observed several vehicles which register to Jones at that location." The Yukon is registered to Jones at the North 4th Street address. The warrant authorizes a search of any vehicle "associated to the address." These descriptions of "vehicles" in the warrant and application are sufficient to enable an executing officer to, "with reasonable effort, ascertain" that the Yukon was an authorized and "intended" vehicle to be searched under the warrant. And, in fact, when the warrant was executed, the Yukon was parked across the street from the address. Officers accessed the Yukon using keys found at the residence, where Jones was present. Tr. 48, 50, 76-77, 89. The warrant does not authorize a general search in violation of the Fourth Amendment and the Court finds that the particularity requirement is satisfied. *See, e.g., United States v. Sherrod,* No. 4:04-cr-75-1H, 2005 WL 8157677, at *3-4 (E.D. N.C. May 20, 2005) (warrant authorizing search of Room #102, a named vehicle, and "other vehicles associated with Room #102" did not lack particularity); *Cf. State v. Lott,* 695 N.W.2d 903 (Wisc. App. 2005) (unpublished) (table) (text appears in Westlaw) (finding "any vehicles associated with said apartment" insufficiently particular as to Chevrolet Caprice registered to co-resident of apartment who arrived in the Caprice while the warrant was being executed and parked it on the street two to four buildings away). In the facts of this case the Yukon was particularly described in the warrant and its search was within its scope.

### III. *Leon* Good Faith Exception

Alternatively, the Government argues that Jones's motion to suppress evidence seized from the Yukon should be denied under the good faith exception of *United States v. Leon,* 468 U.S. 897 (1984). Under *Leon*, evidence will not be suppressed when it was

8

seized in reasonable, good-faith reliance on a facially valid search warrant that is later found to be invalid. A warrant issued by a judge normally suffices to establish that a law enforcement officer acted in good faith in conducting the search. *Id.* at 922. However, an officer's reliance on a warrant is objectively unreasonable:

> (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer could not reasonably presume the warrant to be valid.

*United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (quotations and citations omitted).

Jones contends the warrant was so lacking in probable cause and particularity that it was unreasonable for Deputy Rolfes, the officer in charge at the execution of the warrant, or other VOTF personnel to rely on it. Def. Mem. 30-31, Dkt. No. 36. As discussed above, the warrant and application were amply supported by probable cause and the particularity requirement was met.

But if the warrant were insufficiently particular or lacking in probable cause *Leon* would apply. In assessing the objective reasonableness of an officer's execution of a warrant, a Court looks to the totality of the circumstances, including any information known to the officer but not presented to the issuing judge. *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015). Here, Deputy Rolfes was in charge of the execution of the warrant. At her direction Deputy Turner performed the search of the Yukon, assisted by Deputy Peterson whose role was to take photographs. Tr. 48, 99. Rolfes knew that the Yukon was registered to Jones at the North 4th Street address. VOTF personnel had previously observed vehicles registered to Jones at the address. Gov't Exs. 2 & 3 (Jan. 5,

9

2021 printouts of Yukon registration, DVS records of Jones's driving history, vehicles, license information, and related information); Tr. 71-73, 76-77, 85. Deputy Rolfes thus knew which vehicles were "associated to the address." *See, e.g., United States v. Gitcho,* 601 F.2d 369, 372 (8th Cir. 1979) (reversing suppression of evidence where warrant recited incorrect address, finding the description sufficiently particular in circumstances in which "the agents executing the warrant personally knew which premises were intended to be searched" and the premises were under surveillance while the warrant was obtained).

Moreover, the two vehicles that were searched, the Mercedes in the driveway and the Yukon across the street, were accessed using keys found in the house. Tr. 48, 76-77. Considering the totality of the circumstances and the information known to Deputy Rolfes in executing the search, the Court finds the officers acted in good faith and the search of the Yukon was reasonable under *Leon.*

Accordingly, for the reasons stated above, the Court recommends Jones's motion to suppress evidence seized from the Yukon be denied.[4]

### RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT Defendant Gregory Jones's Motion to Suppress Evidence [Dkt. No. 23] be DENIED.

Dated: August 5, 2022           s/David T. Schultz
                                                             DAVID T. SCHULTZ
                                                              U.S. Magistrate Judge

---

[4] Because of the Court's recommended disposition of the motion, it does not address the applicability of the automobile exception to the warrant requirement.

10

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).